UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ISABEL SANTAMARIA,

     Plaintiff,

v.                                        Case No: 6:18-cv-1618-Orl-41TBS

CARRINGTON MORTGAGE SERVICES,
LLC, BANK OF AMERICA, N.A.,
AKERMAN LLP, LIEBLER, GONZALEZ &
PORTUONDO, P.A., MARINOSCI LAW
GROUP, P.C., P.A., WILLIAM P. GRAY,
PAUL W. ETTORI, SCOTT R. STENGEL,
SAHILY SERRADET and MICHAEL P.
GELETY,

     Defendants.

---

## REPORT AND RECOMMENDATION

This case comes before the Court on Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form), which I have construed as a renewed motion to proceed *in forma pauperis* (Doc. 6). For the reasons that follow, I respectfully recommend that the motion be **denied**, and Plaintiff's complaint **dismissed** with an opportunity to amend.

### I. Legal Standard

Federal courts may allow an individual to proceed *in forma pauperis* if that person declares in an affidavit that she "is unable to pay [filing] fees or give security therefor." 28 U.S.C. § 1915(a)(1). However, prior to determining whether a plaintiff qualifies to proceed *in forma pauperis*, the Court, pursuant to 28 U.S.C. §1915(e)(2), must review the complaint to determine whether it should be dismissed. Garrett v. Internal Rev. Servs., 694 F. App'x 761 (11th Cir. 2017)("Garrett applied to proceed in forma pauperis, so the

district court was required to review his complaint and to 'dismiss the case ... if ... the action or appeal ... [was] frivolous.'"); Abram-Adams v. Citigroup, Inc., Case No. 12-CIV-80339-DMM, 2012 WL 12931975, at *1 (S.D. Fla. May 8, 2012) ("District courts must review civil complaints filed in forma pauperis and shall dismiss complaints that are frivolous, malicious, or fail to state a claim"). Section 1915(e) provides that a district court may dismiss a case filed *in forma pauperis* if it is satisfied that the action is frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant. Id. § 1915(e)(2). If the complaint is deficient, the Court must dismiss the lawsuit on its own authority. See id.

The United States Supreme Court has observed that "a litigant whose filing fees and court costs are assumed by the public ... lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." Neitzke v. Williams, 490 U.S. 319, 324 (1989). Still, the Supreme Court cautioned that a case should only be dismissed as frivolous if it relies on meritless legal theories or facts that are clearly baseless. See id. at 327. A complaint should not be dismissed for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2nd Cir. 1999) (per curiam) (citation and internal quotation marks omitted); see also Troville v. Venz, 303 F.3d 1256, 1260 & n.5 (11th Cir. 2002) (per curiam).

A lawsuit is frivolous if the plaintiff's realistic chances of ultimate success are slight. Clark v. Ga. Pardons & Paroles Bd., 915 F.2d 636, 639 (11th Cir. 1990). The trial court must determine whether there is a factual and legal basis, of constitutional or statutory dimension, for the asserted wrong. Id. The Court should order a § 1915 dismissal only when a claim lacks an arguable basis in law. Neitzke, 490 U.S. at 325.

Claims may lack an arguable basis in law because of either factual or legal inadequacies. Id.

Legal theories are frivolous when they are "indisputably meritless." Id. at 329. Section 1915 authorizes the dismissal of "claims of infringement of a legal interest which clearly does not exist." Id., at 327. A complaint is also frivolous where it asserts factual allegations that are "clearly baseless," which, in turn, encompass allegations that are "fanciful," "fantastic," and "delusional." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (quoting Neitzke, 490 U.S. at 325, 327-28).

## II. Background[1]

Plaintiff Isabel Santamaria complains about the way she was treated by the parties, their lawyers and the judges in a Florida state court case and, to a lesser extent, in an earlier lawsuit in this federal court (Doc. 1). Plaintiff claims that she is disabled but has not alleged the specific nature of her disabilities (Id., ¶ 16). She says her disabilities impair her ability to communicate, understand, and, at times, listen (Id., ¶ 17). She also experiences panic attacks and other unspecified medical issues (Id.).

Plaintiff seeks relief under the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189 and 12203, as well as 28 C.F.R. § 36 (Doc. 1). She also alleges intentional and negligent infliction of emotional distress (Id.). Plaintiff "seek[s] to hold Defendants collectively accountable for depriving [her] of her civil rights and for Defendants' failure, neglect, and refusal to protect Plaintiff from said deprivations although it was in their power to do so." (Id. at 2). Defendants include a mortgage loan servicer, a bank, three law firms, and five attorneys (Id. at ¶¶ 4-14).

---

[1] The Court has not made any findings of fact in this case. It has simply restated the allegations made in Plaintiffs' complaint, filed on the public docket at entry number 1.

In 2014, Defendant Carrington Mortgage Services ("CMS"), represented by Defendant Marinosci Law Group, P.C., P.A. ("Marinosci"), sued in Brevard County, Florida to foreclose a mortgage on Plaintiff and her husband's home (Id., ¶ 45). In 2015, an assignment of the mortgage by Defendant Bank of America, N.A. ("BANA") to CMS, together with a limited power of attorney, was recorded in the public records (Id., ¶¶ 51-52).

In 2016, Plaintiff and her husband counterclaimed against CMS, BANA and Marinosci (Id., ¶ 54). BANA, represented by Defendant Leibler, Gonzalez & Portuondo, P.A. removed the counterclaim to this Court, Case No. 6:16-cv-227-Orl-40KRS (Id., ¶ 55). Plaintiff and her husband countered with a motion for remand to the state court (Id., ¶ 56).

While this was going on, Plaintiff and her husband informed opposing counsel that Plaintiff would get assistance from an Americans with Disabilities Act ("ADA") advocate (Id., ¶ 57). The advocate's role would be to assist Plaintiff in all proceedings and meetings and to interact with opposing counsel (Id.). ADA Judicial Access subsequently appointed Dr. Rebecca Sharp to advocate for Plaintiff (Id., ¶ 62).

This Court entered an Order in the 2016 case requiring the parties to meet and conduct an initial case management conference (Id., ¶ 58). Defendants William P. Gray and Scott R. Stengel of Akerman LLP, in their roles as attorneys for CMS phoned Plaintiff's husband to schedule the meeting (Id., ¶ 59). Plaintiff's husband said she would not attend without her ADA advocate whereupon Gray allegedly mocked Plaintiff's husband (Id.). From this point on, all counsel of record allegedly undertook discriminatory and retaliatory actions against Plaintiff (Id.).

In May of 2016, Plaintiff submitted to the state trial court an ADA Title II Accommodation Request (Id., ¶ 64). "The most important and necessary accommodation

requested by the Plaintiff was the assistance of an ADA Advocate at all times due to her disabilities and to protect her civil rights." (Id.). The state court advised Plaintiff that the presiding state judge had approved the requested accommodations (Id.).

Plaintiff alleges that counsel held the initial case management conference in the federal case without participation by her, her husband, or Sharp (Id., ¶ 63). Then, Defendants filed a Notice of Compliance in this Court "attacking the Plaintiff and her spouse with retaliatory and deceitful information to prejudice the Court against Plaintiff and her spouse to the Plaintiff's detriment." (Id., ¶ 65). I located the Notice of Compliance in Case No. 6:16-cv-227-Orl-40KRS. It advised the Court that Plaintiff and her husband had refused to attend the case management conference if a representative of CMS was present. Defendants also stated that a copy of the proposed case management report was provided to Plaintiff and her husband, who made comments which were incorporated into the report, before it was filed (Case No. 6:16-cv-227-Orl-40KRS, Doc. 45 at 2).

Plaintiff and her husband moved to strike the Notice of Compliance, which they alleged, was not true (Case No. 6:16-cv-227-Orl-40KRS, Doc. 53). Defendants responded to the motion to strike (Id., Doc. 55). However, the case was remanded to the state court with no ruling being made on the motion to strike (Id., Doc. 57).

A hearing was set in the state court foreclosure case on Plaintiff's Motion for Proof of Authority to Represent (Doc. 1, ¶ 69). Plaintiff prepared her argument for the hearing and gave a copy to Sharp in case Plaintiff had a medical episode during the hearing (Id.). On the day of the hearing, Plaintiff had an anxiety attack and was barely able to talk (Id., ¶ 70). Sharp read Plaintiff's argument whereupon Stengel "became agitated and accused Dr. Sharp in open courtroom of 'unlicensed practice of law'" (Id., ¶ 71). The state court denied Plaintiff's motion (Id.).

After the hearing Plaintiff, her husband, and Sharp were "ambushed outside the courtroom" by Stengel and attorney Defendants Sahily Serradet and Michael P. Gelety (Id., ¶ 72). The attorneys allegedly engaged in a verbal attack which included threats to remove Sharp from the case (Id.). Plaintiff's husband and Sharp subsequently filed affidavits in the state court "regarding this malicious and retaliatory conduct." (Id., ¶ 73).

A state court hearing was scheduled on a motion to dismiss Plaintiff's counterclaim (Id., ¶¶ 75-76). Then, Serradet asked Sharp for Plaintiff's medical records and a copy of Sharp's authority to represent Plaintiff (Id., ¶ 77). Sharp replied in an email in which she referenced "the personal attack and further deliberate discrimination that occurred outside the courtroom on June 29, 2016 wherein you and your partners in crimes, Scott Stengel and Michael Gelety, embarked on berating my client and me" among other matters (Id., ¶ 78). Sharp also prepared and submitted a Statement of Grievance against Stengel, Serradet, Gelety, and state Judge Lawrence Johnston (Doc. 1-3).

Days before the hearing on the motion to dismiss counterclaim Plaintiff learned that Sharp had a conflict that would prevent her from attending (Id., ¶ 81). State Judge Charles Holcomb initially denied Plaintiff's motion to cancel the hearing, but, following the filing of an emergency motion for reconsideration and an "attorney cancellation" the hearing was cancelled (Id., ¶ 82). Then Judge Holcomb entered an order stating in part that: "No Federal regulations exist in the Act that permits an ADA advocate to speak on behalf of the disabled client during a court proceeding…". (Id., ¶ 85).

In November 2016, Sharp was attending a hearing in Duval County on behalf of another of her ADA clients (Id., ¶ 87). At that hearing, an attorney from Defendant Akerman LLP asked the judge if he had "received a copy of the Brevard County order on the ADA issues involving Ms. Sharp?" (Id.). Plaintiff alleges that she and Sharp were

never "notified that the 'unfinalized' Amended Order by Judge Holcomb would be utilized as a 'retaliatory' tactic against Dr. Rebecca Sharp, her client in Duval County and against the Plaintiff and her husband with the intent to cause further harm." (Id.). "Due to the widespread damage and retaliation by the attorney Defendants in utilizing Judge Charles Holcomb's Amended Order to advance their discriminatory agenda, Plaintiff and her husband filed a 'Motion to Disqualify Judge Holcomb' on November 15, 2016." (Id., ¶ 88).

A November 30, 2016 hearing was set in the state court foreclosure case (Id., ¶ 89). Sharp was not available to attend the hearing and Plaintiff filed a motion to cancel it (Id., ¶ 90). At this point Sharp was also representing Plaintiff's husband, who suffered from a neurological disability (Id.). The hearing, which was set before state Judge Lisa Davidson, was not cancelled (Id., ¶ 91). This meant Plaintiff had to attend without Sharp, "her court-approved and most necessary ADA accommodation." (Id.). No efforts were made to accommodate Plaintiff at the hearing (Id., ¶ 92). Judge Davidson denied Plaintiff's emergency motion to cancel the hearing and proceeded to hear argument (Id., ¶ 93). "Plaintiff was forced to defend herself during a 'panic attack' and while being unprepared." (Id.). During this hearing Judge Davidson allegedly "smirk[ed] at the attorney Defendants as if it were planned. This was 'retaliation' against Plaintiff and Plaintiff's ADA Advocate in violation of the ADA." (Id., ¶ 96). For most of the time Plaintiff was in the courtroom she was hyperventilating and otherwise in severe distress, but she alleges, this was purposefully ignored (Id., ¶ 98). According to Plaintiff, she "was being 'ambushed' by the Court and Defendants with ADA issues without her ADA Advocate present, issues she was not yet familiar with or prepared to argue and issues that were not reserved for the hearing or on the docket for that day all while being incapacity and unprepared." (Id., ¶ 99). During the hearing Defendants argued for dismissal of Plaintiff's

counterclaim based on the doctrine of *res judicata* (Id., ¶¶ 102-103). Judge Davidson was agreeing with these arguments while Plaintiff endured a panic attack (Id., ¶ 103). Plaintiff alleges that she passed-out sometime during the hearing and then later, collapsed to the floor (Id., ¶¶ 105 -106). Paramedics were called and advised that Plaintiff's blood pressure was 230 over 165 (Id., ¶ 109). Plaintiff was taken to the hospital and Judge Davidson said the hearing would have to be rescheduled (Id., ¶ 110).

According to Plaintiff: "No human being should be treated like this. Nonetheless, Judge Lisa Davidson forced the hearing to proceed, with the full cooperation of opposing counsel, knowing that Plaintiff was fully incapacitated and could no longer speak for herself, further denying her due process and civil rights. Judge Davidson and the Defendants' behavior was with 'malicious intent' and they clearly did not care about Plaintiff's well-being or if she was in severe medical distress, dead or alive in her chair, and Defendants continued arguing the case knowing well ahead of time that Plaintiff was disabled and was denied the use of her required accommodation." (Id., ¶ 112). Within hours after Plaintiff collapsed in court she and her husband began receiving emails from Stengel to reschedule the hearing (Id., ¶¶ 114-115). Plaintiff views these emails as further harassment by Defendants (Id., ¶ 117).

Plaintiff's doctor wrote a "'medical necessity' note" excusing her from all court proceedings for at least 90 days (Id., ¶ 118). This note was submitted to the state court ADA coordinator and in addition, Plaintiff filed a notice of unavailability (Id., ¶¶ 118-119). In January 2017, Plaintiff filed a grievance with the Florida Judicial Qualifications Committee against Judge Davidson (Id., ¶ 120).

By February 2017, Plaintiff could no longer contact Sharp. "Plaintiff can only assume that the threats by opposing counsel and the Court became so intense that Dr.

Sharp completely cut ties with Plaintiff or something more sinister occurred to the detriment of Plaintiff." (Id., ¶ 122).

In February 2017, "Plaintiff filed a 'Notice of ADA Violations' on the Docket." (Id., ¶ 124). She also "filed an ADA Civil Rights Violations complaint with the U.S. Department of Justice's Civil Rights Division ("DOJ") against all parties mentioned herein." (Id., ¶ 125). And, Plaintiff filed Bar complaints against Stengel and Serradet (Id., ¶¶ 126-127). She was preparing Bar complaints against Gelety, Gray and Ettori when she fell ill (Id., ¶ 128). Neither the DOJ or the Bar pursued Plaintiff's complaints (Id., ¶¶ 129-131).

Plaintiff and her husband hired an attorney they could not afford and went to another hearing in front of Judge Davidson (Id., ¶¶ 132-134). At the hearing Judge Davidson "stared at the Plaintiff as she sat down and gave an intimidating look." (Id., ¶ 134). Despite the judge's antagonism toward Plaintiff and her lawyer, the judge did give Plaintiff leave to amend her counterclaim (Id.). But, after Serradet "demanded that severe sanctions be given to the Plaintiff, her husband and their attorney if the amended pleading was not above and beyond the pleading standard….Judge Davidson quickly mimicked Defendant Serradet's request and threatened Plaintiff, her husband and their attorney with sanctions if the pleading did not meet the 'extreme' pleading standards that she had imposed. Plaintiff's affirmative defenses were also unjustifiably stricken." (Id.).

Plaintiff's attorney filed an answer, affirmative defenses and counterclaim which included "criminal" defenses and claims (Id., ¶¶ 135-136). Plaintiff complains that CMS' responses were untimely and evasive (Id., ¶ 137). Judge Davidson set the foreclosure trial for August 16, 2018 (Id.). On July 27, 2018 Plaintiff filed an updated ADA Title II Accommodation Request in the state court (Id., ¶ 139). The state court case was

reassigned to Judge Dugan who approved Plaintiff's updated ADA Accommodation Request (Id., ¶ 143).

The foreclosure case went to mediation on August 3, 2018 (Id., ¶ 140). Plaintiff attended but had to leave the room because she felt anxious and did not want to make eye contact (Id.).

Plaintiff filed another ADA complaint with the DOJ on August 7, 2018, alleging ongoing discrimination and retaliation (Id., ¶ 141). Plaintiff filed a discrimination complaint with the U.S. Department of Housing and Urban Development on August 11, 2018 (Id., ¶ 142).

The state court trial was held and Judge Dugan "illegally" ordered foreclosure of Plaintiff's home (Id., ¶ 145). The sale was set for October 17, 2018 (Id.). Plaintiff subsequently filed a complaint with the Defense Intelligence Agency Civil Liberties Department alleging civil rights violations (Id., ¶ 146). She also complained to her congressman (Id., ¶ 147).

Plaintiff's complaint in this Court alleges that Defendants' conduct violated the ADA by denying her participation in, equal access to, and the benefits of the courts (Id., ¶¶ 154-167). She also claims that she was discriminated against and retaliated against in violation of the ADA (Id., ¶¶ 168-198). And she says Defendants intentionally and negligently inflicted emotional distress on her (Id., ¶¶ 199-244). Plaintiff seeks compensatory and punitive damages, injunctive relief, costs, and other relief (Id., at 48).

### III. Discussion

In 1990, Congress enacted the ADA, as a "national mandate," to prohibit discrimination against individuals with disabilities and to provide a mechanism for enforcement of laws promulgated under the statute. See 42 U.S.C.A. § 12101(b)(1)-(2).

Injunctive relief is the exclusive remedy for Title III violations, but an individual may recover compensatory damages if she shows she was intentionally discriminated against under Title II. See Alumni Cruises, LLC v. Carnival Corp., 987 F. Supp. 2d 1290, 1316-1317 (S.D. Fla. Dec. 12, 2013); Wilson Broward Cnty., Case No. 04-61068-CIV-MARRA/SELTZER, 2005 WL 8154795, at *3 (S.D. Fla. June 3, 2005). Plaintiff alleges that Defendants violated Titles II and III of the ADA and the statute's retaliation clause (Doc. 1, ¶¶ 154-198).[2] Each of Plaintiff's claims is subject to Federal Rule of Civil Procedure 8(a), which requires her to provide a short and plain statement of the basis of the Court's jurisdiction, her entitlement to relief, and a demand for relief. Plaintiff must allege each claim in a legible manner with numbered paragraphs, incorporating by reference other parts of the pleading for clarity. FED. R. CIV. P. 10. Relevant facts should be segregated to each of their respective claims. See Beckwith v. Bellsouth Telecoms, Inc., 146 F. App'x. 368, 372 (11th Cir. 2005). Although district courts apply a "less stringent standard" to the pleadings submitted by a *pro se* plaintiff, even *pro se* litigants must allege the essential elements of their claims for relief. See Eidson v. Arenas, 910 F. Supp. 609, 612 (M.D. Fla. 1995) (citations omitted). Plaintiff's complaint falls short of satisfying the Rule 8 standard and fails to state any claim upon which this Court can grant relief.

### A.  Title II Violations (Count I)

Title II of the ADA prohibits a public entity from discriminating against a disabled

---

[2] The statute of limitations for ADA claims in Florida is four (4) years. See Favreau v. Florida, Nos. 6:07-cv-723-Orl-22DAB, 6:07-cv-1210-Orl-22DAB, 2007 WL 3171331, at *6 (M.D. Fla. Oct. 25, 2007) ("statute of limitations in ADA case are governed by Florida's four-year personal injury statute of limitations, FLA. STAT. § 95.11(3)") (quoting Moyer v. Walt Disney World Co., 146 F. Supp. 2d 1249, 1254 (M.D. Fla.2000)); see also Everett v. Cobb Cty. Sch. Dist., 138 F.3d 1407, 1409-10 (11th Cir.1998). Plaintiff's complaint begins with events in 2011-2012 but the majority of her complaints concern events in 2016 and 2017 (Doc. 1).

individual because of that person's disability and provides that:

> [N]o qualified individual with a disability[3] shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1081 (11th Cir. 2007) (citing 42 U.S.C. § 12132). Title II protects a disabled plaintiff's right of access to the court system. Tennessee v. Lane, 541 U.S. 509, 523, 529, 533-534 (2004). "In order to state a Title II claim, a plaintiff generally must prove (1) that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." Bircoll, 480 F.3d at 1083 (citing Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001)); see (42 U.S.C. § 12132).

In Count I, Plaintiff argues that the individual attorney defendants violated her right to enjoy full access to the courts by "allow[ing] a hearing to continue [in her absence] and [by] display[ing] recklessness and malicious indifference" after she became ill in court (Id., ¶ 155-158). Plaintiff's argument is unpersuasive. It is the judicial officer, as the state actor, that has the responsibility to accommodate her and to take reasonable measures to "remove architectural or other barriers to accessibility." Tennessee, 541 U.S. at 532. A judge's inherent authority to manage her own docket is a principle that is widely acknowledged. See Madura v. BAC Home Loans Svc, LP, 655 F. App'x 717, 722 (11th Cir. 2016); cf. In re Report and Recommendations of the Committee on the Appointment

---

[3] Title II defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications ... or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Bircoll, 480 F.3d at 1081 (citing 42 U.S.C. § 12131(2)).

and Assignment of Senior Judges, 847 So.2d 415, 420 (2003); Powell v. Watson, 565

So.2d 845, 846 (Fla. 5th DCA 1990) ("[I]t is the trial court's responsibility to manage cases

pursuant to the rules of judicial administration."). Plaintiff has not sued any of the judges

named in her complaint, or the Circuit Court in and for the Eighteenth Judicial Circuit of

Florida, where those judges sit.

The wrongful actions that Plaintiff describes -- indifference and mockery - may be

signs of a moral deficiency, but don't rise to the level of a cognizable legal claim. Title II is

expected to apply in cases in which there is some physical, social or financial barrier to

court access. See Tennessee, 541 U.S. at 523, 529, 533-534 (ADA protects a physically

disabled litigant's right to access the court without any physical barriers, like stairs);

McCauley v. Ga., 466 F. App'x 832, 835 (11th Cir. 2012) (Court found that for a plaintiff

suffering from lupus erythematosus, access to court had been preserved because she

was granted the accommodation of appearing at the hearing via telephone); Harrison v.

Office of State Courts Adm'r, No. 6:06-cv-1878-Orl-19UAM, 2007 WL 1576351, at *2

(M.D. Fla. May 30, 2007) (Court rejected plaintiff's argument that the denial of his request

for a realtime court reporter impaired his access to the court). Plaintiff does not allege that

she was denied access to the state courts. Instead, she complains about the way she

was treated by the judges and attorneys in those courts. On this record, I find that Plaintiff

has failed to state a cause of action in Count I of her complaint.

*B.  Title III Violations (Count II)*

"Title III prohibits discrimination by private entities in places of public

accommodation" and provides: "No individual shall be discriminated against on the basis

of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person

who owns, leases (or leases to), or operates a place of public accommodation." <u>Access Now, Inc. v. S. Fla. Stadium Corp.</u>, 161 F. Supp. 2d 1357, 1362 (S.D. Fla. 2001) (citing 42 U.S.C. § 12182(a)). The elements necessary to sustain a cause of action under Title III are similar to those in Title II, except that the plaintiff must also prove that the defendant is a place of public accommodation. <u>See</u> <u>Raetano v. Sardo's Pizza, Inc.</u>, No. 8:09-CV-01569-T30EAJ, 2010 WL 326167, at *3 (M.D. Fla. Jan. 21, 2010) ("[T]he elements of an action under Title III of the ADA are that '(1) [the plaintiff] is an individual with a disability; (2) that defendant is a place of public accommodation; and (3) that defendant denied [him] full and equal enjoyment of the goods, services, facilities or privileges offered by defendant; (4) on the basis of [his] disability.'") (quoting <u>Schiavo ex rel. Schindler v. Schiavo</u>, 358 F. Supp. 2d 1161, 1165 (M.D. Fla. 2005)).

Plaintiff alleges that the individual defendants conspired to discriminate against her "in written communications via email and Court filings" and "through acts that caused [her] severe distress, humiliation and injury" in order "to attain a superior advantage over the Plaintiff in their greed-driven objective[.]" (Doc. 1, ¶¶ 171-173). She alleges that the law firm and bank defendants are vicariously liable for the acts of their agents (<u>Id.</u>, ¶¶ 175-176).

Again, Plaintiff fails to allege a viable cause of action. The ADA prohibits discrimination in public accommodations "by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); <u>Access Now</u>, 161 F. Supp. 2d at 1362. Plaintiff has not alleged facts showing how the mandates of the statute apply to any of the Defendants. Consequently, I respectfully recommend that Count II be dismissed.

### C. Retaliation (Count III)

The ADA makes it unlawful for any person to retaliate against a qualified individual with a disability who avails herself of the protections of the statute. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164, 1180-1181 (11th Cir. 2003) (citing 42 U.S.C. § 12203). The statute provides that,

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). To make a *prima facie* case of retaliation, Plaintiff must show "that (1) she engaged in statutorily protected expression; (2) she suffered an adverse ... action; and (3) the adverse action was causally related to the protected expression." Shotz, 344 F.3d at 1180-1181 (quoting Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir.2002)). Although the Eleventh Circuit has not determined whether compensatory and punitive damages are available to ADA retaliation claimants, persuasive authority suggests that they are, in fact, recoverable. Rumler v. Dept. of Corr, Fla., 546 F. Supp. 2d 1334, 1343 (M.D. Fla. 2008).

Plaintiff makes several assertions about the poor treatment she and her ADA Advocate allegedly received in the state court proceedings, but she has not demonstrated that any "adverse action" occurred. Plaintiff makes conclusory allegations that Defendants "retaliated" against her and her ADA advocate during the hearing and verbally attacked, threatened, and intimidated them after the hearing, but she doesn't specify the protected action she took that Defendants conspired to retaliate against. See e.g. Benton v. Crane Merch. Sys. Inc., Case No. 1:12-cv-185 (LJA), 2016 WL 5662014, at * 8 (M.D. Ga. Sept. 29, 2016) (Plaintiff filed a retaliation claim based on his filing a EEOC

charge against his employer. The court ultimately concluded that the retaliation claim

failed because plaintiff failed to show a causal link between the adverse action and his

protected expression). In other words, Plaintiff has failed to show that she attempted to

engage in an activity protected under the ADA; that Defendants committed an illegal

action in retaliation against her for engaging in said activity; and that illegal action

somehow caused an adverse action to occur. "[N]ot every unkind act is sufficiently

adverse" and Plaintiff has failed to sustain her burden of proof under the ADA. See Shotz,

344 F.3d at 1181 (internal quotations omitted).

> D. *State-Based Claims: Intentional Infliction of Emotional Distress (Counts IV), Negligent Infliction of Emotional Distress (Count V)*

Because Plaintiff has failed to state a federal cause of action, I respectfully

recommend that the Court decline to exercise supplemental jurisdiction over her state law

claims. The Court gets its power to exercise supplemental jurisdiction over state law

claims from 28 U.S.C. § 1367(a) which provides:

> (a) Except as provided in subsections (b) and (c) or as
> expressly provided otherwise by Federal statute, in any civil
> action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all
> other claims that are so related to claims in the action within
> such original jurisdiction that they form part of the same case
> or controversy under Article III of the United States
> Constitution. Such supplemental jurisdiction shall include
> claims that involve the joinder or intervention of additional
> parties.

28 U.S.C. § 1367(a).

"By its language, section 1367(a) authorizes a court to hear supplemental claims

to the full extent allowed by the 'case or controversy' standard of Article III." Palmer v.

Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1566 (11th Cir. 1994). When deciding

whether state claims are sufficiently related to a federal claim courts examine the

pleadings to determine whether the state and federal claims arise from the same facts, or involve similar occurrences, witnesses, or evidence. Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996). Under the statute, a district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In this case, once Counts I and II are dismissed, I respectfully recommend that the district judge decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### E.  Litigation Privilege

Plaintiff's compliant also fails because Florida's litigation privilege extends absolute immunity "to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior ... so long as the act has some relation to the proceeding." Echevarria et al. v. Cole, 950 So.2d 380, 383 (Fla. 2007) (quoting Levin et al. v. United States Fire Ins. Co., 639 So.2d 606, 608 (Fla. 1994)); see also Sims v. Unation, LLC, 292 F. Supp. 3d 1286, 1299-1300 (M.D. Fla. 2018). "The Florida Supreme Court has explained that the litigation privilege exists to allow 'for candid and unrestrained communications in th[e] proceedings, free of the threat of legal actions predicated on those communications[.]'" Sims, 292 F. Supp. 3d at 1300 (quoting Echevarria, 950 So.2d at 384). Although the invocation of the litigation privilege has its limitations, none of those limitations apply here.

Since Plaintiff has failed to sufficiently state a cause of action under ADA, the litigation privilege remains viable to extinguish any general claims she may have of litigation wrongdoing on the part of Defendants. The litigation privilege also serves to bar her state law tort causes of action, as articulated in Counts IV and V. See Echevarria, 950 So.2d at 383 (quoting Levin, 639 So.2d at 608).

*F. Conclusion*

I have serious doubts about Plaintiff's ability to state a cause of action for any of the alleged violations against any of the Defendants. Although not discussed above, many of Plaintiff's complaints are not plausible, or supported by the emails and transcripts upon which she relies. Nevertheless, out of an abundance of caution, I recommend that Plaintiff be given an opportunity to amend her complaint and file a new motion for leave to proceed *in forma pauperis*.

## IV. Recommendation

For these reasons, I **RESPECTFULLY RECOMMEND** that the district judge **DENY** Plaintiff's renewed motion to proceed *in forma pauperis* (Doc. 6), and **DISMISS** this case **with 21 days leave to amend**. If Plaintiff does not file an amended complaint within the time allowed, then the case should be dismissed and the matter closed.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on November 27, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Plaintiff, pro se