UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ISABEL SANTAMARIA,

    Plaintiff,

v.                                Case No: 6:18-cv-1618-Orl-41TBS

CARRINGTON MORTGAGE SERVICES, LLC, BANK OF AMERICA, N.A., AKERMAN LLP, LIEBLER, GONZALEZ & PORTUONDO, P.A., MARINOSCI LAW GROUP, P.C., P.A., WILLIAM P. GRAY, PAUL W. ETTORI, SCOTT R. STENGEL, SAHILY SERRADET and MICHAEL P. GELETY,

    Defendants.

## REPORT AND RECOMMENDATION

This case comes before the Court on Plaintiff's third Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form) (Doc. 17). For the following reasons I respectfully recommend that the application be **denied** and that this case be **dismissed without prejudice**.

### I. Legal Standard

Federal courts may allow an individual to proceed *in forma pauperis* if that person declares in an affidavit that she "is unable to pay [filing] fees or give security therefor." 28 U.S.C. § 1915(a)(1). Prior to determining whether a plaintiff qualifies to proceed *in forma pauperis*, the Court, pursuant to 28 U.S.C. §1915(e)(2), must review the complaint to determine whether it should be dismissed. Garrett v. Internal Rev. Servs., 694 F. App'x 761 (11th Cir. 2017) ("Garrett applied to proceed in forma pauperis, so the district court was required to review his complaint and to 'dismiss the case ... if ... the action or appeal

... [was] frivolous.'"); Abram-Adams v. Citigroup, Inc., Case No. 12-CIV-80339-DMM, 2012 WL 12931975, at *1 (S.D. Fla. May 8, 2012) ("District courts must review civil complaints filed in forma pauperis and shall dismiss complaints that are frivolous, malicious, or fail to state a claim"). Section 1915(e) provides that a district court may dismiss a case filed *in forma pauperis* if it is satisfied that the action is frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant. Id. § 1915(e)(2). If the complaint is deficient, the Court must dismiss the lawsuit on its own authority. See id.

The United States Supreme Court has observed that "a litigant whose filing fees and court costs are assumed by the public ... lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." Neitzke v. Williams, 490 U.S. 319, 324 (1989). But, the Supreme Court cautioned that a case should only be dismissed as frivolous if it relies on meritless legal theories or facts that are clearly baseless. See id. at 327. A complaint should not be dismissed for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2nd Cir. 1999) (per curiam) (citation and internal quotation marks omitted); see also Troville v. Venz, 303 F.3d 1256, 1260 & n.5 (11th Cir. 2002) (per curiam).

A lawsuit is frivolous if the plaintiff's realistic chances of ultimate success are slight. Clark v. Ga. Pardons & Paroles Bd., 915 F.2d 636, 639 (11th Cir. 1990). The trial court must determine whether there is a factual and legal basis, of constitutional or statutory dimension, for the asserted wrong. Id. The Court should order a § 1915 dismissal only when a claim lacks an arguable basis in law. Neitzke, 490 U.S. at 325.

Claims may lack an arguable basis in law because of either factual or legal inadequacies. Id.

Legal theories are frivolous when they are "indisputably meritless." Id. at 329. Section 1915 authorizes the dismissal of "claims of infringement of a legal interest which clearly does not exist." Id., at 327. A complaint is also frivolous where it asserts factual allegations that are "clearly baseless," which, in turn, encompass allegations that are "fanciful," "fantastic," and "delusional." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (quoting Neitzke, 490 U.S. at 325, 327-28).

## II. Case Background[1]

In 2014, Defendant Carrington Mortgage Services ("CMS") began servicing the mortgage on the home owned by Plaintiff and her husband (Doc. 16, ¶ 33). In 2015, CMS, represented by Defendant Marinosci Law Group, P.C., P.A. ("Marinosci"), filed suit to foreclose the mortgage on Plaintiff's home (Id., ¶ 34). In 2016, Plaintiff and her husband counterclaimed against CMS, Defendant Bank of America, N.A. ("BANA"), and Marinosci (Id., ¶ 35). Plaintiff fails to explain in her amended complaint, the reason for including BANA in the counterclaim.

Plaintiff represents that she is disabled due to diabetes (mellitus), Type 2 (adult onset); hypertension; fibromyalgia/chronic fatigue syndrome; multiple sclerosis (suspect); sciatic neuropathy; annular fissures with bulges and protrusions in her cervical spine; carpal tunnel syndrome; migraine unspecified; PTSD (with PTSD related panic attacks in response to stimuli associated with a nerve stressor); major depressive disorder; ADHD; glaucoma (both eyes); Uveitis Busacca's Nodules, in both eyes; and bilateral ocular

---

[1] This section summarizes the averments in Plaintiff's amended complaint (Doc. 16). Nothing contained in this Report and Recommendation constitutes a finding of fact on my part..

hypertension (Id., ¶ 22). She says that she "suffers from well-documented cognitive disabilities which often renders her unable to function in stressful situations." (Id., ¶ 24). Plaintiff claims that these disabilities impair her ability to communicate, understand, and, at times, listen (Id., ¶ 30). She also reports experiencing panic attacks and other unspecified medical issues (Id.).

In the state foreclosure case Plaintiff and her husband informed opposing counsel that Plaintiff would be receiving assistance from an Americans with Disabilities Act ("ADA") advocate (Id., ¶ 38). The advocate's role would be to assist Plaintiff in all proceedings and meetings and to interact with opposing counsel (Id.). ADA Judicial Access appointed Dr. Rebecca Sharp to advocate for Plaintiff (Id., ¶ 39).

In May of 2016, Plaintiff submitted an ADA Title II Accommodation Request to the state court (Id., ¶ 38). Of the multiple requests made by Plaintiff: "The most important and necessary accommodation requested by the Plaintiff was the assistance of an ADA Advocate at all times due to her disabilities and to protect her civil rights." (Id.). The presiding state judge approved the requested accommodations (Id.).

A hearing was scheduled on Plaintiff's Motion for Proof of Authority to Represent (Id., ¶ 39). Plaintiff attended the hearing with her husband and Sharp (Id.). She experienced a panic attack during the hearing and asked Sharp to read her argument into the record (Id.). The state court judge was cooperative with Sharp's participation in the proceedings (Id.).

Plaintiff alleges that after the hearing she, her husband, and Sharp were "ambushed outside the courtroom" by Defendants Scott Stengel, Sahily Serradet and Michael P. Gelety (Id., ¶ 40). Stengel is an attorney affiliated with Defendant Akerman LLP (Id., ¶ 15). Serradet is an attorney affiliated with Defendant Liebler, Gonzalez &

Portuondo (Id., ¶ 17). Gelety is an attorney affiliated with Marinosci (Id., ¶ 18). The attorneys allegedly engaged in a verbal attack which included threats to remove Sharp from the case (Id., ¶ 40).

Plaintiff notified counsel that due to her disabilities, she required larger print documents (Id., ¶ 43). She complains that despite this notice, Serradet and other unnamed Defendants refused to furnish her larger print documents (Id.).

Sharp filed a grievance with the Executive Assistant to the State Courts Administrator against the Defendant attorneys (Doc. 16-4). The outcome of the grievance is unknown.

Another state court hearing was scheduled for September 16, 2016 (Doc. 16, ¶ 45). After Plaintiff learned that Sharp had a conflict and would be unable to attend, she filed a notice of non-availability and a motion to cancel the hearing (Id.). In these papers Plaintiff complained "about opposing counsel's malicious behavior" and stated that "opposing counsel were triggers to [Plaintiff's] condition for which they had to be replaced or reprimanded to hold them accountable for ADA violations" (Id.). State court Judge Charles Holcomb denied the motion to cancel the hearing (Id., ¶ 46). Then Plaintiff filed a motion for reconsideration and the hearing was cancelled (Id.). Judge Holcomb subsequently entered an order which "critiqued [Plaintiff's] accommodations and disabilities and ignored SERRADET, STENGEL and GELETY's belligerent behavior outside the courtroom" (Id., ¶ 47). The order set a new hearing for November 30, 2016 (Id.).

On November 11, 2016, Sharp was attending a hearing in Duval County on behalf of one of her other ADA clients (Id., ¶ 51). At the hearing an Akerman attorney asked the judge if he had "received a copy of the Brevard County order on the ADA issues involving

Ms. Sharp?" (Id.). Plaintiff complains that she and Sharp were never "notified that the 'unfinalized' Amended Order by Judge Holcomb would be utilized as a 'retaliatory' tactic against Dr. Rebecca Sharp, her client in Duval County and against the Plaintiff and her husband with the intent to cause further harm." (Id.). "Due to the widespread damage and retaliation by the attorney Defendants in utilizing Judge Charles Holcomb's Amended Order to advance their discriminatory agenda, Plaintiff and her husband filed a 'Motion to Disqualify Judge Holcomb' on November 15, 2016." (Id., ¶ 53). The case was reassigned to Judge Lisa Davidson (Id., ¶ 57).

A November 30, 2016 hearing was set in the state court foreclosure case (Id., ¶ 54). Sharp was not available to attend the hearing and Plaintiff filed a motion to cancel it (Id., ¶¶ 55-56). At this point Sharp was also representing Plaintiff's husband, who suffers from a neurological disability (Id. at ¶ 56). The hearing, which was set before Judge Davidson, was not cancelled (Id., ¶ 57). This meant Plaintiff had to attend without Sharp (Id.). At the hearing: "Plaintiff was forced to defend herself during a 'panic attack' and while being unprepared." (Id., ¶ 59). Plaintiff alleges that Judge Davidson retaliated against her by forcing her to proceed without her ADA advocate, while she was incapacitated and unprepared, in violation of her Fourth Amendment rights (Id., ¶ 62). For most of the time Plaintiff was in the courtroom she was hyperventilating and otherwise in severe distress, but she claims this was purposefully ignored (Id., ¶ 64).

During the hearing Defendants argued for dismissal of Plaintiff's counterclaim based on the doctrine of *res judicata* (Id., ¶¶ 66-67). Plaintiff states that she had to take medication in open court while she endured a panic attack (Id., ¶ 67). She reports passing-out sometime during the hearing and later, collapsing to the floor (Id., ¶ 69). Paramedics were called and advised that Plaintiff's blood pressure was 230 over 165 (Id.,

¶ 72). Plaintiff avers that Judge Davidson "under color of law, co-conspired with counsel Defendants and their Defendant clients beforehand or at the very least, during the proceeding (Id., ¶ 68). After Plaintiff left for the hospital Judge Davidson rescheduled the hearing (Id., ¶ 73).

Plaintiff asserts that: "No human being should be treated like this. Nonetheless, Judge Lisa Davidson forced the hearing to proceed, with the full cooperation of opposing counsel, knowing that Plaintiff was fully incapacitated and could no longer speak for herself, further denying her due process and civil rights. Judge Davidson and the Defendants' behavior was with 'malicious intent' and conspired to violate [Plaintiff's] rights given the opportunity that they were aware that [she] would be alone in the courtroom without her ADA Advocate/Oral Interpreter." (Id., ¶ 75). Within hours after Plaintiff collapsed in court she and her husband began receiving emails from Stengel to reschedule the hearing (Id., ¶¶ 81). Plaintiff views these emails as further harassment by Defendants (Id.,). In January 2017, Plaintiff filed a grievance with the Florida Judicial Qualifications Committee against Judge Davidson (Id., ¶ 82).

By February 2017, Plaintiff could no longer contact Sharp. "Plaintiff can only assume that the threats by opposing counsel and the Court became so intense that Dr. Sharp completely cut ties with Plaintiff or something more sinister occurred to the detriment of Plaintiff." (Id., ¶ 83). The trial court administrator refused to assist Plaintiff in finding another ADA Advocate (Id., ¶ 84).

In February 2017, "Plaintiff filed a 'Notice of ADA Violations' on the Docket." (Id., ¶ 85). She also "filed an ADA Civil Rights Violations complaint with the U.S. Department of Justice's Civil Rights Division ("DOJ") against all parties mentioned herein." (Doc. 1, ¶ 125). And, Plaintiff filed Bar complaints against Stengel and Serradet (Doc. 16, ¶¶ 86-87).

She was preparing Bar complaints against Gelety and Defendant attorneys William P. Gray and Paul W. Ettori when she fell ill (Id., ¶ 128). Neither the DOJ or the Bar pursued Plaintiff's complaints.

Plaintiff and her husband felt compelled to hire an attorney to represent them in the state court (Id., ¶ 90). According to Plaintiff, Judge Davidson "was defiant and retaliatory against Plaintiff's attorney and at times stared-down the Plaintiff likely because of the JQC Complaint the Plaintiff filed on the record." (Id., ¶ 91). Plaintiff filed another grievance but alleges that the state's ADA grievance procedure is "severely flawed" and that consideration should be given to a disabled litigant who shows good cause for delay (Id., ¶ 98).

Plaintiff alleges that: "After years of abuse, discrimination and retaliation by the Defendants named hereing, on August 16, 2018, Plaintiff [ ] and her husband illegally lost their home to foreclosure at a bench trial with Judge David Dugan presiding. Judge Dugan set sale date for Plaintiff and her husband's home for October 17, 2018." (Id., ¶ 102). Plaintiff says she "suffered extensive damages as a result" (Id.).

In her amended complaint Plaintiff seeks relief under the ADA, 42 U.S.C. §§ 12181-12189 and 12203; 28 C.F.R. § 36; damages for conspiracy to violate 42 U.S.C § 1983 for deprivation of rights in violation of the Fourteenth Amendment to the Constitution; damages for intentional infliction of emotional distress; and negligent infliction of emotional distress, pursuant to 28 C.F.R. 36.501 and 29 U.S.C. § 794(a) (Id.). She is asking the Court "to hold Defendants collectively accountable for depriving [her] of her civil rights and for Defendants' failure, neglect, and refusal to protect Plaintiff from said deprivations although it was in their power to do so." (Id. at 2). Defendants include a mortgage loan servicer, a bank, three law firms, five attorneys, two state court judges, the

Eighteenth Judicial Circuit Court in and for Brevard County, Florida, and the state of Florida (Id. at ¶¶ 6-19).

### III. Procedural History

When Plaintiff filed this lawsuit she sought leave to proceed *in forma pauperis* (Doc. 2). That motion was denied without prejudice (Doc. 5) and Plaintiff renewed her request on October 12, 2018 (Doc. 6). On November 27, 2018, I entered a report in which I recommended that the renewed motion be denied and that Plaintiff's complaint be dismissed with an opportunity to amend (Doc. 9). The district judge adopted my report and recommendation, denied Plaintiff's renewed *in forma pauperis* motion, and dismissed her complaint without prejudice (Doc. 15). The district judge gave Plaintiff until February 27, 2019 to amend her complaint. Plaintiff filed her amended complaint on the deadline (Doc. 16).

### IV. Discussion

Plaintiff's complaint suffers from numerous deficiencies which I do not discuss here. Instead, I focus on Plaintiff's bankruptcy filing and the effect of that decision on this case. Between the time Plaintiff filed this lawsuit and her amended motion to proceed *in forma pauperis* Plaintiff and her husband filed bankruptcy (Id., ¶ 103). The case was commenced under Chapter 13, Case No. 6:18-bk-7478. (Doc. 1). On March 15, 2019, at Plaintiff's request, the bankruptcy court case was converted from Chapter 13 to Chapter 7 (Bankruptcy Case, Doc. 29). In the order converting the case the bankruptcy Judge appointed a Chapter 7 Trustee (Id. at 3). This resulting in Plaintiff being divested of her claims against Defendants.

"Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." Parker v.

Wendy's Intern., Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) (citing Barger v. City of Cartersville, 348 F.3d 1289, 1292 (11th Cir.2003)); Doscher v. Barnett, Case No. 6:16-cv-1515-Orl-18TBS, 2016 U.S. Dist. LEXIS 175967, at *2 (M.D. Fla. Nov. 4, 2016). "When a bankruptcy case is filed, virtually all of the debtor's assets vest in the bankruptcy estate. Such property includes causes of actions belonging to a debtor at the commencement of a case." In re Upshur, 317 B.R. 446, 452 (Bankr. N.D. Ga.2004) (citing 11 U.S.C. § 541(a)(1)); Chen v. Siemens Energy Inc., 467 F. App'x 852, 853-54 (11th Cir. 2012) ("The trustee, as the representative of the bankruptcy estate, becomes the only party with standing to bring a cause of action that belongs to the estate."). Under 11 U.S.C. § 554, once an asset becomes part of the bankruptcy estate, the debtor's rights in the asset are extinguished unless the asset is abandoned back to the debtor. Chen, 467 F. App'x at 853 (citing Parker, 365 F. 3d at 1272).

Plaintiff's claims alleged in this case accrued before she filed her original bankruptcy petition and before the case was to Chapter 7. Plaintiff included the underlying state court case in her original Chapter 13 schedule of assets but made no mention of this action (Bankruptcy Case, Doc. 13).

When Plaintiff filed her Chapter 7 petition, "all of [her] interest in the causes of action that are pending in this court–both legal and equitable–became property of [her] Chapter 7 bankruptcy estate and no longer belonged to the plaintiff personally." See Oswalt v. Sedgwick Claims Mgmt. Servs., Inc., No. 3:14-CV-956-WKW, 2015 U.S. Dist. LEXIS 183417, 2015 WL 1565033, at *2 (M.D. Ala. Apr. 8, 2015), aff'd, 624 F. App'x 740 (11th Cir. 2015); Haven v. Hot Rayz Commc'n, LLC, No. 6:11-cv-2028-Orl-28TBS, 2013 WL 2154871, at *3 (M.D. Fla. May 17, 2013). Consequently, Plaintiff does not have standing to pursue her claims asserted in this Court.

## V. Recommendation

Now, I **RESPECTFULLY RECOMMEND** that the district judge **DENY** Plaintiff's third motion to proceed *in forma pauperis* (Doc. 17), and **DISMISS** this case **WITHOUT PREJUDICE**, without leave to amend.

## VI. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on April 1, 2019.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Plaintiff, pro se